UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) |
| vs. | ) Case No. 4:22CR419 SEP(SPM) |
| STEPHEN J. THORP, | ) |
| Defendant. | ) |

### REPORT AND RECOMMENDATION AND MEMORANDUM OPINION OF UNITED STATES MAGISTRATE JUDGE

All pretrial matters in this case were referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. §636(b). The defendant, Stephen J. Thorp, is alleged to have "barricaded himself in a residence in Randolph County" and "fired multiple shots towards the deputies surrounding the residence" on April 11, 2022. Thorp has been indicted of the following federal offenses: Assault on a Federal Officer Using a Deadly Weapon, in violation of 18 U.S.C. §111(a)(1) and (b) (Count I); Discharge of a Firearm in Furtherance of a Crime of Violence, in violation of 18 U.S.C. §924(c)(1)(A)(iii) (Count II); and Felon in Possession of a Firearm in violation of 18 U.S.C. §922(g) (Count III). *See* Doc. 2.

Thorp timely filed three pretrial motions: Motion to Dismiss Counts I and II of the indictment (Doc. 51); Motion Dismiss Count III of the indictment (Doc. 52);

and Motion to Suppress Evidence (Doc. 54).[1] On February 27, 2024, the undersigned held an evidentiary hearing on Thorp's suppression motion and, at the request of the parties, agreed to rule on the remaining motions based upon the parties' written submissions. For the reasons stated below, the undersigned recommends the Court grant the parties' request to defer ruling on the constitutional challenges raised in Thorp's Motion to Dismiss Counts I and II of the indictment. The undersigned further recommends that this Court deny Thorp's Motion to Dismiss Count III of the indictment and deny Thorp's Motion to Suppress Evidence.

I.   **MOTION TO DISMISS COUNTS I AND II OF THE INDICTMENT (DOC. 51)**

Count I of the indictment charges that:

> On or about April 11. 2022, in Randolph County, within the Eastern District of Missouri, STEPHEN J. THORP, Defendant herein, did knowingly and forcibly assault, resist, oppose, impede, intimidated and interfere with Deputy U.S. Marshal Justin Mullens and Deputy U.S. Marshal Chris Schmieding, while Deputy Mullens and Deputy Schmieding were engaged in the performance of their official duties, by using a deadly and dangerous weapon. In violation of Title 18. United States Code, Sections 111(a)( I) and (b).

*See* Doc. 2.

Thorp contends Count I should be dismissed because section 111 of title 18 is unconstitutionally vague, as applied to the facts of this case. *See* Doc. 51, p. 2-8. Thorp anticipates that evidence at trial will establish that he did not fire on the

---

[1] Defendant filed a fourth pretrial motion—motion for discovery (Doc. 57). However, Defendant withdrew the motion by the time of the evidentiary hearing. *See* Docs. 53 & 62.

officers. Instead, Thorp posits, any shots officers may have heard coming from inside the residence were not aimed at federal officers outside but occurred while Thorp struggled with suicidal impulses. *See id.* at p. 1-2. Thorp argues "when a vagueness challenge turns upon the resolution of "factual issues related to [the defendant's] alleged offense," a court "should defer ruling until trial." *Id.* (quoting *United States v. Turner,* 842 F.3d 602, 605 (8th Cir. 2016)).

Thorp further argues that, if Count I is dismissed, Count II must also be dismissed because "in order for a jury to convict [Thorp] of violating §924(c)(1)(A)(iii) as charged in Count Two, the jury must find he committed a 'crime of violence'—specifically, the 'crime of violence' charged in Count One." *See* Doc. 51, at p. 8.

In its response, the United States agreed with Thorp, noting that under *Turner*, "ruling on [Thorp's] motion prior to trial would constitute reversible error." *See* Doc. 56, at p. 1. The United States acknowledged that, because Thorp's particular conduct will have to be established at trial, Thorp's constitutional challenge is not ripe for adjudication.

The undersigned has carefully reviewed the authorities cited by the parties and agrees that, for the reasons articulated in Thorp's motion and in the United States' response, any ruling on Thorp's motion to dismiss Counts I and II should be deferred until after trial.

3

## II.     MOTION TO DISMISS COUNT III OF THE INDICTMENT (DOC. 52)

Citing the Supreme Court's decision in *New York State Rifle & Pistol Assoc., Inc. v. Bruen*, 597 U.S. 1, 24 (2022), Thorp moves to dismiss Count III of the indictment on grounds that "the prosecution of this offense violates his Second Amendment rights," and §922(g)(1) is unconstitutional as applied to him. See Doc. 52, at p. 2. Thorp acknowledges in his motion that the Eighth Circuit foreclosed the argument he has raised in *United States v. Jackson*, 69 F.4th 495, 502 (8th Cir. 2023), reh'g denied, No. 22-2870, 2023 WL 5605618 (8th Cir. Aug. 30, 2023) (concluding that "there is no need for felony-by-felony litigation regarding the constitutionality of § 922(g)(1)"). Thorp acknowledges this Court is bound by the Eighth Circuit's decision in *Jackson* but contends that *Jackson* was incorrectly decided. Thorp notes that because there is a conflict between *Jackson* and the Third Circuit's decision in *Range v. Attorney General*, 69 F.4th 96 (3d Cir. 2023), cert. pet. docketed, No. 23-374 (U.S. Oct. 10, 2023), the Supreme Court may soon clarify when, and if, prosecutions under §922(g)(1) are constitutional. Thorp concedes that, in filing the instant motion, he hopes only to preserve the issue in the event it is taken up by the Supreme Court.

   As the United States correctly noted in its response:

> As an initial matter, this Court is bound to follow *Jackson*, not *Range*. *Hood v. United States*, 342 F.3d 861, 864 (8th Cir. 2003) (reversing district court for "declin[ing] to apply binding precedent of our Circuit and instead embrac[ing] the reasoning of

4

> Fifth, Seventh, Ninth, and D.C. circuits"). The Eighth Circuit has found that Section 922(g)(1) is constitutional as applied to all felons, and that courts need not conduct "felony-by-felony litigation regarding the constitutionality of [Section] 922(g)(1)." *Jackson*, 69 F.4th at 502. The Court cannot ignore that holding and follow *Range*.

Doc. 55, ap. 6. This Court agrees. Irrespective of the merits (or lack of merit) of the remaining arguments made by the parties, this Court's analysis begins and ends with this threshold finding—that the issue raised in Thorp's motion to dismiss Count III of the indictment has been foreclosed by *Jackson*. For these reasons, the motion to dismiss should be denied.

### III.   MOTION TO SUPPRESS PHYSICAL EVIDENCE (DOC. 54)

Thorp seeks an order suppressing (1) body camera video, drone video, and other recordings taken by law enforcement and (2) a gun. This evidence was seized on April 11, 2022, when officers were executing an arrest warrant for Thorp at the residence of third party, Clint Baker. Thorp contends officers' intrusion into the residence (and its curtilage) was illegal because at the time of the intrusion, officers did not have reason to conclude that Thorp resided at the residence and was present.

At the evidentiary hearing on Thorp's suppression motion, Task Force Officer Michael Williams testified on behalf of the United States. The United States also presented documentary evidence. Thorp presented no evidence other than the testimony of Officer Williams on cross examination. At the close of the

hearing, Thorp's attorney initially made an oral request for a supplemental evidentiary hearing but then requested fourteen days to either file a supplemental brief or give notice to the Court that no supplemental brief would be filed. The Court granted Thorp's request. On March 12, 2024, Thorp filed a notice stating he would not be filing a post-hearing brief and would not be renewing his previously filed Motion for Disclosure of Information Pertaining to Confidential Informants. Doc. 75. Having carefully considered the written submissions of the parties, the hearing transcript, and all evidence presented, I make the following findings of fact and conclusions of law.

### A. FACTUAL FINDINGS

At the time of the evidentiary hearing, Michael Williams was a fifteen-year veteran police officer with the Missouri State Highway Patrol. He had been assigned to the U.S. Marshal Fugitive Taskforce ("Fugitive Taskforce") since October 2019, and had experience conducting fugitive investigations. In March of 2022, Officer Williams was contacted by Task Force Officer Jason Ward ("TFO Ward") who, at that time, was also a special deputy U.S. Marshal and part of the North Missouri Drug Task Force. Ward wanted Williams' help locating and apprehending Thorp on a warrant issued by the Missouri Board of Probation and Parole. *See* Govt. Exh. 2. The arrest warrant was premised on new felony charges against Thorp in case number 22CW-CR00170 and Thorp's failure to report after

being released from custody. Govt. Exh. 2; *see also* Govt. Exh. 3, Charge, Case net: 22CW-CR00170- *State v. Stephen Thorp*, (E-Case).

Officer Williams began to gather information about Thorp including his last known address, by reviewing the arrest warrant and information from NCIC, a law enforcement database. Williams also reviewed Thorp's arrest history, criminal history, other identifying information such as whether he had any scars, marks, tattoos, and information indicating whether he had a history of violent arrests. Williams also contacted Scott Davis, a bail bondsman who posted bond for Thorp in case no. 22CW-CR00170. Davis confirmed that Thorp's last known address was 710 West Rollins Street in Moberly, Missouri.

Armed with this information, on March 28, 2022, Williams and an arrest team went to 710 West Rollins Street to arrest Thorp. The team gained entry to the residence after knocking and announcing their presence to no avail. Mr. Thorp was not at the Rollins Street address. The officers spoke to neighbors who indicated they had seen Thorp at the residence with his wife, Lisa Thorp. The officers left paperwork at the West Rollins address to alert the homeowners/occupants that law enforcement had forcibly entered the home.

Shortly after officers' failed attempt to arrest Thorp at the West Rollins address, Officer Williams learned that TFO Ward had interviewed Mrs. Thorp (Lisa), who had been taken into custody on unrelated charges. Mrs. Thorp told

TFO Ward that she had been staying at Clint Baker's house and Thorp had shown up at that residence. Based on his ongoing fugitive investigation, Officer Williams was aware that Baker was an associate of Thorp's. On or about April 5, 2022, Williams applied for, and obtained, a search warrant for Thorp's Facebook account. *See* Govt. Exh. 6. In reviewing Thorp's Facebook account, Officer Williams saw that Thorp and Baker were mutual Facebook friends. Williams was able to confirm Baker's address first by conducting a Google search and then by searching NCIC for Baker. Williams' search revealed that Baker resided at 1654 County Road 2360 in Moberly, Missouri.

Based on a corroborated tip from one of Thorp's family members,[2] on or about April 7, 2022, Officer Williams applied for, and obtained, a search warrant directed to Verizon for location information from Thorp's cell phone. *See* Govt. Exh. 8. From about April 7/8th through April 11th (the date of Thorp's arrest) Williams received location information in fifteen-minute intervals. The location information consistently placed Thorp's phone at or in the vicinity of Baker's residence.

On the morning of April 11th Officer Williams and other members of the Fugitive taskforce and from the Northern Missouri Drug Task Force met for a

---

[2] Officer Williams testified that the family member showed TFO Ward a screenshot of her phone with Thorp's contact information. *See* Doc. 77 (Hrng. Tr.), at p. 24.

safety briefing before making their way to Baker's house to arrest Thorp. By the time Williams adjourned the safety meeting he was able to verify that Thorp's cell phone was still at or in the vicinity of Baker's home. Once the officers arrived at Bakers home, they set up a "containment team" in the rear of the residence and placed an armored vehicle approximately fifty yards from the front of the house. Thereafter, officers called for Clint Baker to come out and he complied. Once out of the house, Baker was interviewed by Officer Williams and confirmed Thorp was inside the residence. Baker gave consent to the officers to go in to get Thorp, asking that law enforcement "only break windows that were already broken." Doc. 77 (Hrng. Tr.), at p. 30. After Baker came out of the house, another occupant, Tiffany Twyron, emerged from the residence. Ms. Twyron was interviewed and also advised that Thorp was in the residence.

     The arrest team took several steps, short of entering the home, to attempt to locate Thorp inside Baker's residence and get him to come out on his own. The Fugitive Taskforce used loudspeaker announcements, deployed a robot into the home, and deployed a K-9 into the home, all to no avail. Once the Moberly SWAT team arrived at the residence, TFO Ward applied for, and obtained, a search warrant for Baker's residence. *See* Govt. Exh. 9.

     The SWAT team used a drone to successfully locate Thorp inside Baker's residence. The drone, which was equipped with audio and videorecording

equipment, captured images of man matching Thorp's description with a handgun in his hand and, ultimately, striking the drone. After the Moberly SWAT team lost sight of Thorp holding the gun, they deployed a chemical agent which forced Thorp to come out of the house and surrender. The standoff between Thorp and law enforcement lasted more than fifteen hours. Once Thorp was arrested, the SWAT team cleared Baker's house and recovered a firearm.

### B. CONCLUSIONS OF LAW

Thorp argues his Fourth Amendment rights were violated the moment the Fugitive Taskforce entered the curtilage of Baker's residence and placed their armored vehicle yards from Baker's front door. The Court will assume, without deciding, that the armored vehicle entered the curtilage of Baker's residence as Thorp contends.[3] The question of whether officers' search of a third party's home—Clint Baker—violates Thorp's Fourth Amendment rights is controlled by the Supreme Court's decision in *Payton v New York,* 445 U.S. 573, 603 (1980).

In construing *Payton*, the Eighth Circuit has held:

> "[A]n arrest warrant founded on probable cause implicitly carries with it the limited authority to enter a dwelling in which the suspect lives when there is reason to believe the suspect is within." *Payton v. New York*, 445 U.S. 573, 603, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980). When a suspect is a "co-resident" of a third party's home, an arrest warrant for the suspect may allow entry into the home. *United States v. Risse*, 83 F.3d 212, 216 (8th Cir. 1996). For entry to be valid,

---

[3] Although the undersigned is not entirely persuaded by the defendant's curtilage argument, the United States has not squarely addressed the argument and the undersigned finds it is unnecessary to resolve the curtilage question to rule on Thorp's motion to suppress.

>officers must have both (1) a reasonable belief that the suspect resides at the place to be entered and (2) reason to believe that the suspect is present at the time the warrant is executed. *Id.* "Whether the officers had reasonable belief is based upon the 'totality of the circumstances' known to the officers prior to entry." *United States v. Glover*, 746 F.3d 369, 373 (8th Cir. 2014) (quoting *United States v. Junkman*, 160 F.3d 1191, 1193 (8th Cir. 1998) ).

*United States v. Ford,* 888 F.3d 922, 926-27 (8th Cir. 2018).

The warrant at issue in this case was an administrative—parole violator—warrant; it was not a warrant issued by a magistrate judge based on probable cause. However, the Eighth Circuit has made clear that, provided an administrative warrant is supported by reasonable cause, it carries the same implied limited authority to enter a dwelling to effectuate an arrest as judicial warrants based upon probable cause. *United States v. Lucas*, 499 F.3d 769, 777 (8th Cir. 2007) (en banc). As such, the parole violator's warrant for Thorp allowed officers to enter Baker's home, or the curtilage of Baker's home if they had both (1) a reasonable belief that Thorp resided at Baker's home and (2) reason to believe Thorp was present at the time the warrant was being executed. *Ford,* 888 F.3d at 926-27.

Reasonable belief is "a less exacting standard than probable cause." *United States v. Quezada*, 448 F.3d 1005, 1007 (8th Cir. 2006) (police officer's reasonable belief that an emergency exists allowed for warrantless entry into home). For example, in *Glover*, the Eighth Circuit held that it was reasonable for law enforcement officers to believe a suspect was a co-resident in a third party's home

when they received an anonymous tip from a 9-1-1 caller that was "consistently accurate and detailed," including the suspect's date of birth and the building's entrance gate code. *Id.* at 373–74. The Court acknowledged that anonymous tips are treated with some mistrust, but held that when "information from an informant is shown to be reliable because of independent corroboration, then it is a permissible inference that the informant is reliable and that therefore other information that the informant provides, though uncorroborated, is also reliable." *Id.* at 373 (quoting *United States v. Williams*, 10 F.3d 590, 593 (8th Cir. 1993)). The Eighth Circuit in *Glover* also found the presence requirement was met because officers observed the suspect's car outside and because the informant, who was talking to the suspect at the time, was able to accurately describe law enforcement activity outside the house to officers. *Id.* at 374.

Similarly, in *United States v. Boyd*, the Eighth Circuit held that it was reasonable for law enforcement officers to believe a suspect was a co-resident in a third party's home when they were told by an informant that the suspect resided there and they corroborated that tip with neighbors. *Boyd,* 180 F.3d 967, 978 (8th Cir. 1999). The court further held that the presence requirement was met by evidence that corroborated the informant's follow-up tip with the fact that the suspect's car was at the home when law enforcement arrived. *Id.*

12

Based on the foregoing factual findings, by the time officers arrived outside of Baker's home, they reasonably believed, based on the totality of the circumstances, Thorp was living there and was present. After failing to find Thorp at his last known address on West Rollins, officers learned from Thorp's wife that Thorp had followed her to Baker's residence. Officer Williams confirmed that Thorp and Baker were friends. Based on corroborated information from a family member, Williams obtained a search warrant for location information for Thorp's cell phone. Williams received phone location information in fifteen-minute increments for Thorp's cell phone from April 7/8th through the morning of April 11th when officers went to Baker's residence to arrest Thorp. That data consistently placed Thorp at or near Baker's home. Because officers had a valid arrest warrant and a reasonable belief Thorp was in Baker's residence when they arrived on the morning of April 11th, Thorp's Fourth Amendment rights were not violated when the Fugitive Taskforce entered the curtilage of Baker's home for the purpose of arresting Thorp.

For all the foregoing reasons, Thorp's motion to suppress should be denied.

## **CONCLUSION**

For the reasons set out in this Memorandum,

**IT IS HEREBY RECOMMENDED** that any ruling on Defendant's Motion to Dismiss Counts I & II of the Indictment (Doc. 51) be **DEFERRED** until after trial.

**IT IS FURTHER RECOMMENDED** that Defendant's Motion to Dismiss Count III of the Indictment (Doc. 52) be **DENIED**.

**IT IS FURTHER RECOMMENDED** that Defendant's Motion to Suppress Evidence (Doc. 54) be **DENIED**.

The parties are advised that they have **fourteen (14)** days in which to file written objections to this report and recommendation pursuant to 28 U.S.C. §636(b)(1), unless an extension of time for good cause is obtained, and that failure to file timely objections may result in a waiver of the right to appeal questions of fact. *See Thompson v. Nix,* 897 F.2d 356 (8th Cir. 1990).

Dated: April 29, 2024.

_____
SHIRLEY PADMORE MENSAH
UNITED STATES MAGISTRATE JUDGE